UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ROBERT HATMAKER            )
                           )
       Plaintiff,          )
                           )  Case No. 1:12-CV-145
v.                         )
                           )  Collier/Lee
                           )
COMMISSIONER OF SOCIAL SECURITY  )
                           )
       Defendant.          )

**M E M O R A N D U M**

Plaintiff Robert Hatmaker ("Plaintiff") brought this action on May 2, 2012, seeking judicial review of the final decision of the Commissioner of Social Security ("Defendant") denying Plaintiff a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. The Court referred the matter to United States Magistrate Judge William B. Mitchell Carter, pursuant to 28 U.S.C. § 636(b) and in accordance with Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation ("R&R") regarding the disposition of Plaintiff's motion for judgment on the pleadings (Court File No. 11) and Defendant's motion for summary judgment (Court File No. 13). The magistrate judge filed a R&R (Court File No. 16) recommending the decision of the Commissioner be affirmed, Plaintiff's motion for judgment on the pleadings be denied (Court File No. 11), Defendant's motion for summary judgment be granted (Court File No. 13), and the case be dismissed. Plaintiff timely filed an objection to the R&R (Court File No. 17). For the following reasons, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R&R (Court File No. 16).

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

### A. Medical History

Plaintiff filed a Title II application for a period of disability, disability benefits, and supplemental security income on February 9, 2009. These claims were denied in April and August 2009, after which he sought a hearing before an Administrative Law Judge ("ALJ"). The hearing was held June 7, 2010. The ALJ issued his decision on September 24, 2010, in which he determined Plaintiff did not qualify for benefits. Plaintiff sought leave from the Appeals Council, which denied his request for review on March 12, 2012. The instant action ensued.

Plaintiff, now fifty-one-years old, was forty-nine-years old at the time of the decision. Plaintiff does not have a high school diploma and had previously worked as a construction painter and roofer (Tr. 22). The alleged onset date of Plaintiff's disability is December 31, 2003 (Tr. 13). The ALJ determined Plaintiff has not engaged in substantial gainful activity since that date (Tr. 15). Plaintiff established the following impairments before the ALJ: degenerative changes of the lumbar spine, essential hypertension, slight tremor of the left upper extremity, depression, and anxiety (Tr. 15). The ALJ concluded Plaintiff could perform light, unskilled work with only occasional grasping with his left upper extremity (Tr. 19). Although the ALJ found Plaintiff could not perform his prior relevant work, based on the testimony of a vocational expert he concluded there were a significant number of jobs in the economy Plaintiff could perform (Tr. 22).

The ALJ considered the examinations of Benjamin Biller, M.S.,[1] and Dr. William Holland. Mr. Biller, a licensed psychological examiner, evaluated Plaintiff on March 2, 2009 at the request of the Social Security Administration (Tr. 20). Mr. Biller found Plaintiff's appearance and behavior to be unremarkable, and his activities of daily living uncompromised by mental limitation. He rated

---

[1] Mr. Biller's examination was supervised by Dr. James Milliron.

his Global Assessment of Functioning ("GAF") score as 70, which suggests some mild symptoms. Dr. Holland evaluated Plaintiff on April 3, 2009, again at the request of the Social Security Administration. Plaintiff reported a history of low back pain, and pain in his right hip and lower leg. Plaintiff was able to sit, stand in seated position, and got on and off the examination table without much difficulty. He exhibited normal range of motion with a slight tremor in his left arm. Dr. Holland examined him again in July 2010 without significant change in his assessment.

Plaintiff, on the other hand, stresses the examination of his treating physician, Dr. Frank Wood. Plaintiff was evaluated by Dr. Wood in March 2009, when Plaintiff sought treatment for hip pain and depression. Dr. Wood prescribed blood pressure medication and medication for depression and pain. In June 2009, he stated Plaintiff possibly could be experiencing rheumatoid arthritis, but blood tests returned negative for that diagnosis. Despite the prescribed medicine, Plaintiff's blood pressure continued to exceed proper parameters.

In August 2009, Plaintiff was involved in a motor vehicle accident. He was treated for a nosebleed and left shoulder pain at the emergency room. He did not have any fractures and x-rays revealed slight facet joint degenerative arthritis in his spine and small anterior osteophytes.

**B. Procedural Background**

The ALJ analyzed Plaintiff's claim under the five-step framework outlined in 20 C.F.R § 404.1520(a)(4)[2]:

---

[2] Because Plaintiff sought a period of disability and disability insurance benefits, as well as supplemental security income, the ALJ applied this regulation and 20 C.F.R. § 416.920(a)(4). Below, where the Court discusses the treating source rule in 20 C.F.R. § 404.1527(c), the companion rule for supplemental security income in 20 C.F.R. § 416.927(c) is also relevant. The relevant portions of the regulations are "identically worded and interpreted," *Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 417 n.6 (6th Cir. 2012), and the Court has accordingly only cited to the former for sake of simplicity.

> 1. If claimant is doing substantial gainful activity, he is not disabled.
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Nejat v. Commissioner of Soc. Sec.*, 359 F. App'x 574, 576 (6th Cir. 2009) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). At steps one through four, the claimant bears the burden of proof. *Id.* However, at step five, the burden shifts to the Commissioner to identify jobs in the economy that the claimant could perform considering his impairments. *Id.*

At step one, the ALJ concluded Plaintiff had not performed any substantial gainful activity since the alleged onset date of his condition. The ALJ then concluded Plaintiff has severe impairments, namely degenerative changes of the lumbar spine, essential hypertension, slight termor of the left upper extremity, depression, and anxiety. At step three, however, the ALJ concluded Plaintiff's impairments or combination thereof did not meet or medically equal a listed impairment. At step four, the ALJ found Plaintiff did not have the ability to perform past relevant work. However, at step five, the ALJ concluded other work exists in the national economy that accommodates Plaintiff's residual functional capacity and vocational factors. Accordingly, the ALJ concluded Plaintiff was not disabled and not entitled to the benefits he seeks.

After the Appeals Council denied Plaintiff's request for review, he sought relief in this court. Plaintiff argued before the magistrate judge that the ALJ erred in failing to sufficiently address Dr.

4

Wood's opinions regarding Plaintiff's mental restrictions and limitations and his physical limitations. As to the his mental limitations, the magistrate judge concluded, although the ALJ did not explicitly mention Dr. Wood's assessment of Plaintiff's mental limitations, this failure was harmless error because it is evident from the ALJ's opinion he considered the treatment of Plaintiff's physician as well as the other opinions in the record. Moreover, Dr. Wood's assessment was so patently defective the ALJ could not have credited it. As to Plaintiff's physical limitations, the magistrate judge concluded the ALJ provided adequate reasons for rejecting the treating physician's opinion. The magistrate judge found the ALJ properly considered Dr. Wood's assessment unsupported by and inconsistent with the record. Finding no error sufficient to remand to the Commissioner, the magistrate judge recommends the ALJ's opinion be affirmed. Plaintiff timely objected.

## II. STANDARD OF REVIEW

This Court must conduct a de novo review of those portions of the R&R to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1). The Court's standard of review is essentially the same as the magistrate judge's – review is limited to determining if the ALJ's findings are supported by substantial evidence and if proper legal standards were used. 42 U.S.C. § 405(g); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). "Substantial evidence" means evidence a reasonable mind might accept to support the conclusion at issue. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). Substantial evidence is greater than a scintilla but less than a preponderance. *Brainard*, 889 F.2d at 681. If supported by substantial evidence, the Court must affirm the ALJ's findings, even

if substantial evidence also supports the opposite conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). The substantial evidence standard presupposes there is a zone of choice within which the decision-makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). The ALJ need not discuss every aspect of the record or explain every finding at length but must "articulate with specificity reasons for the findings and conclusions that he or she makes" to facilitate meaningful judicial review. *Bailey v. Comm'r of Soc. Sec.*, No. 90-3061, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999).

## III.  DISCUSSION

Plaintiff objects to the magistrate judge's rejection of both his original arguments: (1) the ALJ erred by ignoring Dr. Wood's opinion of Plaintiff's mental restrictions and limitations; and (2) the ALJ did not adequately consider the regulatory factors when rejecting Dr. Wood's opinion of Plaintiff's physical limitations.

### A.  Treating Source Rule

The regulations implementing the Social Security Act require the ALJ generally to afford the opinion of a claimant's treating physician substantial deference. 20 C.F.R. § 404.1527(c)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Such deference, however, is due only when a treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" before the ALJ. 20 C.F.R. § 404.1527(c)(2). If the ALJ decides not to accord the opinion of a treating physician controlling weight, the ALJ relies on a number of factors–including the length of the treatment relationship and frequency of evaluation, nature and extent of the treatment relationship, how well supported by medical evidence the treating physician's opinion is, the consistency of the

6

treating physician's opinion with the record as a whole, and whether the treating physician is a specialist–to determine how much weight to give the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2)-(6). Ultimately, the determination of disability is "the prerogative of the Commissioner, not the treating physician." *Warner v. Comm'r Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Harris v. Heckler*, 726 F.2d 431, 435 (6th Cir. 1985)) (internal alteration omitted).

The agency's regulations require the ALJ to provide "good reasons" for discounting a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). Failure to follow this procedural requirement "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Failure to give good reasons may require remand, because the rule exists to provide the claimant adequate notice and fair process. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009); *see also Wilson*, 378 F.3d at 544.

As Plaintiff notes, "[a] court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely." *Wilson*, 378 F.3d at 546. An ALJ's failure to strictly comply with the rules is not, however, always cause to remand the case back to the Commissioner. The Sixth Circuit has identified a number of

7

circumstances in which a violation of the rules would constitute harmless error: (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "where the Commissioner has met the goal of § 1527[(c)]³(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (quoting *Wilson*, 378 F.3d at 547). In the third circumstance, courts consider whether "the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments." *Id.* (citing *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470–72 (6th Cir.2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006)) (emphasis in original). "If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused." *Id.*

### B. Mental Limitations

As the Commissioner concedes, the ALJ did not explicitly consider Dr. Wood's assessment of Plaintiff's mental restrictions and limitations, nor did he enumerate any specific reasons for failing to accord it controlling weight. The magistrate judge concluded this *de minimis* violation of

---

³ In February 2012, the Social Security Administration redesignated paragraphs (d) through (f) of 20 C.F.R. § 404.1527 to (c) through (e). How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,656 (Feb. 23, 2012). Accordingly, prior to that date, references to the relevant regulatory factors reference subparagraph (d), rather than subparagraph (c). Similar changes have been made throughout this opinion without indicating the change, save for quotations wherein the change is indicated with brackets. The same renumbering was performed to the companion rule at 20 C.F.R. § 416.927.

8

the regulation constituted harmless error.

Although the ALJ failed to discuss Dr. Wood's assessment of Plaintiff's mental restrictions and limitations, he did consider Plaintiff's mental condition and discussed why that condition did not amount to disability.

> The claimant has further alleged disability secondary to anxiety and depression. Dr. Wood did prescribe medication for depressive symptomatology (Exhibit 11F) and the claimant has continued to allege sleep disturbances and excessive worry (Exhibit 3F). However his statements do not suggest mental limitations of such severity as to preclude any work activity. Indeed, the claimant has not sought mental health treatment and his GAF score was noted to be 70 suggesting only a mild limitation of function (Exhibit 3F). Mentally, the claimant can still perform unskilled work.
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. As for the opinion evidence, Mr. Biller opined the claimant is functioning in the average range of intelligence without psychotic symptoms. He appeared to have a mild level of depression and anxiety secondary to his declining physical health and related life problems. He also opined his ability to understand and remember simple and/or detailed instructions appears to be unaffected; his ability to sustain concentration and be persistent with work processes appears to be mildly affected due to depression and anxiety; his ability to interact with peers and supervisors in a standardized work setting appears to be minimally affected due to depression and anxiety; and his ability to adapt to changes in the work environment and to be aware of hazards appears to be unaffected (Exhibit 3F). I find Mr. Biller's opinion well supported by the record and give it substantial weight. His opinion is substantiated by medically acceptable clinical diagnostic techniques and is consistent with the other substantial evidence in the claimant's case record.
> . . . .
> The State agency's psychological examiners reviewed the claimant's file as it stood on March 16, 2009 and opined the claimant's mental impairments were not severe. I find this opinion to be inconsistent with the medical record as the claimant's treating physician prescribed medication for the claimant's depressive symptomatology. Therefore, I give this opinion little weight.
> . . . Further, I find the claimant would encounter some difficulty functioning in some work environments due to his depression and anxiety. However, I do not find credible evidence to support the claimant's physical and mental limitations preclude all work activity. Indeed, the claimant's statements and testimony, coupled with the

overall record, support that he has the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, he could sit, with normal breaks, for up to 6 hours in an 8 hour day, he could stand and/or walk, with normal breaks, for up to 6 hours in an 8 hour day, and he could occasionally use his left upper extremity to grasp objects. Further, I find claimant would be able to understand, remember, and carry out unskilled tasks, despite his mental impairments. These limitations are consistent with light unskilled work.

(Tr. 24-26).

As demonstrated above, the ALJ accorded Dr. Wood's opinion some weight to the extent it convinced the ALJ Plaintiff did, in fact, suffer from a serious mental health condition. The ALJ did not, however, explain why he was relying upon Mr. Biller's opinion over Dr. Woods, nor did he explain why he was not according Dr. Wood's opinion controlling weight. The magistrate judge concluded such a failure was harmless error, because Dr. Wood's opinion was so patently defective the ALJ could not possibly have credited it. The magistrate judge also found the ALJ's evaluation indirectly attacked Dr. Wood's opinion.

The Court agrees in part. As an initial matter, the Court cannot agree Dr. Wood's assessment is so patently defective the ALJ could not have credited it. It is true that mental health is outside of Dr. Wood's area of expertise and within Mr. Biller's area of expertise. The rules provide the Commissioner will "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5); *see also Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 335 (6th Cir. 2007) (upholding ALJ's rejection of treating source opinion in part because "[the treating source's] diagnosis of disability partially relied on his assessment of [Plaintiff's] mental health, an area outside of [the treating source's] expertise"). Moreover, as the magistrate judge noted, the first and only time Dr. Wood diagnosed any sort of mental impairment was the day *after* he completed the opinion

10

form discussing Plaintiff's mental limitations (*see* Tr. 284, 289). Nothing else in his treatment notes supports his findings of mental impairment. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 441 (6th Cir. 2010) ("[A]n ALJ must give a treating physician's opinion controlling weight only if the opinion relies on objective medical findings, and substantial evidence does not contradict it.") (citations omitted).

Yet the fact remains the ALJ *did* credit Dr. Wood's opinion to some degree. The ALJ concluded the State's psychological examiners' opinions were inconsistent with the medical records because Dr. Wood prescribed medication to treat Plaintiff's depression. The Sixth Circuit has suggested, where an ALJ relies on a doctor's opinion in part, the opinion cannot then be considered patently defective. *See Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) ("It cannot be said that Dr. Vishnupad's opinions are patently deficient, because the ALJ found them sufficient as to Cole's category of diagnosis."). Such is the case here.

However, the Court concludes the ALJ's discussion of Mr. Biller's opinion indirectly attacks Dr. Wood's conclusions. In *Nelson*, the Sixth Circuit concluded the ALJ's discussion of the claimant's mental impairments indirectly attacked both of his treating sources' opinions. The ALJ made brief reference to those opinions and did not explain the weight given to either source's opinion. The court, however, found the ALJ's discussion of the claimant's mental impairments sufficiently realized the goals of the regulation.

> Drs. Cook and Peterson[, Plaintiff Nelson's treating sources,] found considerable limitations on Nelson's work abilities, as detailed above. The [vocational expert] noted in her testimony that if Nelson were limited in the ways Drs. Cook and Peterson found, Nelson could not perform on a sustained basis any jobs that existed in significant number. Dr. Cook's and Dr. Peterson's opinions obviously conflict with the medical opinions of: 1) Drs. Walker and Kupstas, the nonexamining state agency doctors, who found few and only moderate limitations resulting from Nelson's mental impairments; 2) Dr. Rogers, who wrote the discharge report from

11

> Nelson's stay at Lakeshore, who found that Nelson had a GAF of 60 and intact memory, concentration, and attention, and fair insight; 3) Dr. Seidner, who determined that Nelson could work alone or in a very reinforcing setting; and 4) Dr. Lew, who assigned Nelson a GAF of 55 and noted that Nelson had intact thought processes, memory, judgment, and insight. In his opinion, the ALJ specifically discussed the findings of Drs. Walker, Kupstas, and Seidner, and the Lakeshore discharge report, which was written by Dr. Rogers. Furthermore, the ALJ explicitly stated that the opinions of Drs. Walker, Kupstas, and Seidner were consistent, thereby further attacking, albeit indirectly, the opinions of Drs. Cook and Peterson. We think it clear that the ALJ's discussion of the record evidence shows that the ALJ found the opinions of Drs. Cook and Peterson to be inconsistent with the other record evidence.

*Nelson*, 195 F. App'x at 471.

Here, the ALJ similarly indirectly attacked Dr. Wood's opinion. When discussing Mr. Biller's opinion evidence, the ALJ noted "I find Mr. Biller's opinion well supported by the record and give it substantial weight. His opinion is substantiated by medically acceptable clinical diagnostic techniques and is consistent with the other substantial evidence in the claimant's case record" (Tr. 24-25). This discussion of Mr. Biller's opinion and reliance on his conclusion is an indirect attack on Dr. Wood's opinion as unsubstantiated and inconsistent with the record evidence. *See Nelson*, 195 F. App'x at 471 ("[T]he ALJ explicitly stated that the opinions of Drs. Walker, Kupstas, and Seidner were consistent, thereby further attacking, albeit indirectly, the opinions of Drs. Cook and Peterson."). The ALJ also noted, in the context of Dr. Wood's diagnosis, "[*h*]*owever*, [Plaintiff's] statements do not suggest mental limitations of such severity as to preclude any work activity. Indeed, the claimant has not sought mental health treatment and his GAF score was noted to be 70, suggesting only a mild limitation of function" (Tr. 24) (emphasis added). The "however" that begins the ALJ's conclusion immediately succeeds discussion of Dr. Wood's diagnosis, implicitly indicating the evidence in the record conflicts with that diagnosis.

Moreover, the ALJ explicitly concluded "[he] d[id] not find credible evidence to support the

claimant's physical and mental limitations preclude all work activity" (*id.*). Dr. Wood, however, listed Plaintiff's ability to conduct a number of normal life and work activities as "poor," which means the "[a]bility in this area is usually precluded" (Tr. 291). Such activities included working at a consistent pace, timely completing tasks, and ability to concentrate (Tr. 292-93). The ALJ's conclusion regarding the lack of credible evidence is an indirect attack on the supportability of Dr. Wood's decision. *See Nelson*, 195 F. App'x at 471 ("[I]n this case the ALJ stated that 'there are no clinical and diagnostic findings to establish [that Nelson] has conditions that would significantly compromise' his RFC. That passage, although it does not directly address the medical opinions of Drs. Cook and Peterson, is an indirect attack on the supportability of those opinions.")

Accordingly, the Court agrees with the magistrate judge that the ALJ's discussion of Plaintiff's mental limitations indirectly attacked Dr. Wood's opinion. The ALJ's failure to explicitly discuss Dr. Wood's opinion therefore constitutes a *de minimis* violation of the rules amounting to harmless error. The Court concludes remand is inappropriate in such a case.

### C. Physical Limitations

Plaintiff argues the ALJ improperly accorded Dr. Wood's assessment of Plaintiff's physical limitations little weight after considering only two of the seven above-discussed regulatory factors in 20 C.F.R. § 404.1527(c)(2). Important to the Court's analysis, Plaintiff does not argue in his objection that the ALJ erred when refusing to provide Dr. Wood's assessment *controlling* weight. Rather, Plaintiff argues, after the ALJ concluded controlling weight was inappropriate, the ALJ failed to adequately consider the seven regulatory factors in determining *how much* weight to accord Dr. Wood's opinion. Plaintiff argues the ALJ erred when he failed to consider (1) the length of the treatment relationship and frequency of examination, and (2) the nature and extent of the treatment

13

relations, both of which are § 1527(c)(2) factors. The magistrate judge found the ALJ adequately explained his reasons for discounting Dr. Wood's opinion and relying on the other medical opinions in the record.

The ALJ engaged in a significant discussion of Dr. Wood's opinion and the reasons the opinion should be discounted.

> Dr. Wood opined in September 2009 in a physical medical opinion form the claimant could sit for 1 hour, 15 minutes at one time, during an 8 hour day, and he could lift and/or carry no more than 5 pounds infrequently. He further opined the claimant would require bed rest during a normal workday and would require 1 hour of rest for every 45 minutes of work performed. He opined the claimant experiences moderately severe pain daily that would cause lapses in his concentration. Further, the claimant could only infrequently use his hands for fine manipulation, typing, writing, and grasping small objects. Dr. Wood further opined on February 9, 2010 that the claimant was disabled and unable to return to work. He did not provide functional limitations with this opinion (Exhibit 11F).
> Social Security Regulations and Social Security Rule 96-2p provide that I must consider the opinions of physicians of record, and that controlling weight must be given to the medical opinion of a treating physician, if it is well supported by the medical evidence and if it is not inconsistent with other substantial evidence. I find no evidence to suggest the claimant's degenerative lumbar changes result in such marked limitations as opined by Dr. Wood in September 2009. Indeed, the consultative examiners all noted the claimant was able to ambulate well and move about the exam room without difficulty (Exhibits 3F, 6F, & 13F). Further, the claimant does perform routine household chores (Exhibits 4E, 5E, & 10E), which is inconsistent with the alleged total incapacitation. Further, Dr. Wood's opinion in February 2010 is also inconsistent with the overall record and not supported by objective clinical findings. Therefore, I have not given these opinions any weight.

(Tr. 25).

As noted above, even if an ALJ does not accord a treating source's opinion "controlling weight," the ALJ must still consider the opinion in accordance with the factors listed in 20 C.F.R. § 404.1527(c)(2). "ALJ written decisions must ultimately contain 'good reasons . . . for the weight [they] give' the opinion, and their explanation 'must be sufficiently specific to make clear to any subsequent reviewers the weight [given] to the treating source's medical opinion and the reasons for

14

that weight[.]'" *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011) (quoting § 404.1527(c)(2); SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)). "Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis." *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)).

In *Francis*, the plaintiff complained the ALJ failed to consider the same factors at issue in this case. *Francis*, 414 F. App'x at 804 ("Francis complains that the ALJ neglected two 20 C.F.R. § 404.1527[(c)](2) factors in weighing Dr. Wakham's opinion: the '[l]ength of the treatment relationship and the frequency of examination' and the '[n]ature and extent of the treatment relationship' between Francis and Dr. Wakham."). Although conceding the ALJ did not mention these factors, the court noted the regulations only require the ALJ provide "good reasons" for the weight given the treating source's opinion, not "an exhaustive factor-by-factor analysis." *Id.* In *Francis*, the ALJ acknowledged the doctor's role as a treating source, and explained the opinion would receive no weight because it was inconsistent with the objective medical evidence, the treatment the plaintiff received, the plaintiff's daily activities, and the assessments of other physicians. The court concluded, "[p]rocedurally, the regulations require no more." *Id.* at 805.

Here, Plaintiff's objection, as the Court understands it, is to the ALJ's failure to consider the two factors discussed above. Plaintiff argues the ALJ improperly accorded Dr. Holland's opinion more weight than Dr. Wood's, because Dr. Holland only examined Plaintiff once and the nature of the examination was merely for disability evaluation. The Court, however, finds this case is similar to *Francis*. After acknowledging Dr. Wood is Plaintiff's treating source, the ALJ discussed the lack of objective medical evidence to support Dr. Wood's opinion, its inconsistency with the other

15

evidence in the record and Plaintiff's daily activities, and the assessment of other physicians examining Plaintiff. These constitute "good reasons" for according Dr. Wood's opinion no weight, and satisfy the regulations.

Plaintiff also argues the ALJ's consideration of Dr. Holland's opinion was insufficient under the regulations. As to Dr. Holland's opinion, the ALJ stated the following.

> Dr. Holland opined on April 3, 2009 that, based on his examination of the claimant that day, he would assign him no limitations. However, on July 22, 2010, Dr. Holland opined the claimant could lift and/or carry up to 50 pounds occasionally, 20 pounds frequently, and 10 pounds continuously. This limitation was directly related to the diagnosis of degenerative changes in the lumbar spine. The claimant could sit, stand, and walk for 2 hours each at one time and for 8 hours each during a normal workday. The claimant could frequently perform all postural movements and could frequently come in contact with accepted environmental limitations (Exhibits 6F and 12F).
> I find Dr. Holland's opinion of July 2010 only somewhat supported by the record and his opinion of April 2009 unsupported by the record. While I agree the claimant can perform work-related activities, I find the degenerative changes in his lumbar spine would cause him to be more limited than opined by Dr. Holland. Therefore, I afford his opinions little weight.

(Tr. 25). Before the ALJ considered the medical opinions, including Dr. Holland's, he considered Plaintiff's symptoms, his daily life activities, and the contents of the consultative evaluations. He also considered x-rays and Plaintiff's treatment history (Tr. 23-24).

Plaintiff again stresses the fact the ALJ did not analyze the length of the relationship, or the nature and extent of the relationship. The Court understands Plaintiff's objection to be that the ALJ improperly accorded more weight to Dr. Holland's opinion than to Dr. Wood's opinion given these two, undiscussed factors. However, the Court has already concluded the ALJ gave "good reasons" for discounting Dr. Wood's opinion. The ALJ did not only discount Dr. Wood's opinion based on Dr. Holland's opinion, but did so considering other consultative examinations in the record and Dr. Wood's own clinical findings. The Court also concludes the ALJ appropriately considered Dr.

16

Holland's opinion. The ALJ concluded Dr. Holland's opinion was only somewhat supported by the record, which he discussed in detail prior to his consideration of Dr. Holland's opinion. Moreover, the ALJ concluded he would provide *less* weight to this opinion and consider Plaintiff's condition more favorably than did Dr. Holland.

The Court has a "clear understanding" of why the ALJ rejected Dr. Wood's opinion and gave some credence to Dr. Holland's opinion, and the Court presumes Plaintiff does as well. *See Francis*, 414 F. App'x at 805 ("Both we and Francis possess a 'clear understanding' of why the ALJ rejected Dr. Wakham's opinion. Noting Dr. Wakham's relationship with Francis, the ALJ outlined the myriad ways in which the doctor's opinion conflicted with evidence in the record."). "The ALJ gave [Plaintiff] his procedural safeguard of reasons—meeting the goal of the regulation—and the only true disagreement lies within the merits of the reasons themselves." *Id.* Accordingly, the magistrate judge appropriately declined to remand this case to the Commissioner.

### IV. CONCLUSION

The Court has considered Plaintiff's objections after its complete review of the record, and has found it without merit. Accordingly, the Court **ACCEPTS** and **ADOPTS** the magistrate judge's R&R (Court File No. 16). The Court **DENIES** Plaintiff's motion for judgment on the pleadings (Court File No. 11), and **GRANTS** Defendant's motion for summary judgment (Court File No. 13). The Court **AFFIRMS** the Commissioner's decision and **DISMISSES** the case.

**An Order shall enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**